UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ADAM C. CRAMPTON,

                          Petitioner,

                                                          9:23-CV-0226
v.                                                        (AJB/ML)


SUPERINTENDENT LILLEY,

                          Respondent.

_____

APPEARANCES:                                   OF COUNSEL:

ADAM C. CRAMPTON
  *Pro se* Petitioner
Mid-State Correctional Facility
Post Office Box 2500
Marcy, New York 13403


LETITIA A. JAMES                               JALINA J. HUDSON, ESQ.
New York State Attorney General                Assistant Attorney General
  Counsel for Respondent
28 Liberty Street
New York, New York 10005

MIROSLAV LOVRIC, United States Magistrate Judge


## REPORT and RECOMMENDATION

## I.    INTRODUCTION

Currently before the Court in this habeas corpus proceeding filed by the petitioner, Adam

Crampton ("Petitioner"), pursuant to 28 U.S.C. § 2254, is a referral to the undersigned for a

report and recommendation from United States District Judge Anthony J. Brindisi regarding the

Petition. (Dkt. No. 1.) Petitioner is challenging a judgment of conviction in New York State Supreme Court of Broome County. (Dkt. No. 1.)

On February 8, 2023, Petitioner filed a *pro se* Petition seeking a writ of habeas corpus challenging his confinement. (Dkt. No. 1.) Superintendent Lilley ("Respondent") has opposed that motion and Petitioner has not filed a traverse. (Dkt. No. 20; *see generally* docket sheet.) For the following reasons, the undersigned recommends that the Petition be denied.

## II.    BACKGROUND

On June 1, 2017, in Broome County, New York, Petitioner was charged with (1) one count of rape in the first degree in violation of N.Y. Penal Law § 130.35(1), (2) one count of criminal sexual act in the first degree in violation of N.Y. Penal Law § 130.50(1), (3) one count of sexual abuse in the first degree in violation of N.Y. Penal Law § 130.65(4), and (4) one count of sexual abuse in the first degree in violation of N.Y. Penal Law § 130.65(1). (State Record ["SR."] at 128-131.)

On June 2, 2017, Petitioner was assigned counsel through the public defender's office. (SR. at 132.)

By letter dated June 29, 2017, Petitioner requested that the trial court reassign him defense counsel because he felt that his attorney was not representing his best interest. (SR. at 323.)

On July 10, 2017, the trial court conducted a hearing regarding Petitioner's request for new counsel. (SR. at 276-281.) At the hearing, Petitioner explained that "anything that [Petitioner] had to try and defend [himself] against [his] case, [he] just felt like it was shot down" by his defense counsel. (SR. at 277.) Defense counsel explained that he and Petitioner reviewed the police reports together and discussed a plea offer from the prosecutor's office, which was

time sensitive. (*Id*. at 278.) The Court stated "I'm not hearing anything that suggest in any way [that defense counsel is] not doing everything that he can to best represent your interests to the best of his ability. If there's something you want him to do or would like him to do, if he can do it within his ethical and legal boundaries, I'm sure he will. But it is in your best interest to work with Mr. Rothermel." (*Id*. at 279-280.)

On August 1, 2017, Petitioner waived indictment and pleaded guilty under a Superior Court Information to rape in the first degree in violation of N.Y. Penal Law § 130.35(1), with the understanding that he would be sentenced to 15-years incarceration followed by 15-years post-release supervision. (Dkt. No. 1 at 1-2, SR. at 76-80, 122-25, 270.) Petitioner admitted that between 2015 and 2017, he engaged in sexual intercourse by forcible compulsion with the victim. (SR. at 80.) Petitioner indicated that he was pleading guilty freely and voluntarily and that no one had forced or coerced him into pleading guilty. (SR. at 078-079.) Petitioner also expressed understanding that, by pleading guilty, he was waiving his trial rights including the rights to testify on his own behalf, call witnesses, and cross-examine the prosecution's witnesses. (SR. at 79.) Petitioner signed a waiver of appeal (SR. at 126-127) and on the record, acknowledged (1) reviewing the appeal waiver with defense counsel, and (2) an understanding of its terms. (SR. at 079-80.)

On October 23, 2017, Petitioner was sentenced to 15-years incarceration and 15-years post release supervision. (Dkt. No. 1 at 1-2, SR. at 088, 122.)

On September 5, 2019, Petitioner filed a *pro se* motion in Broome County Supreme Court pursuant to N.Y. Crim. Proc. L. § 440.10 seeking to vacate the judgment of conviction. (SR. at 001.) Petitioner's motion argued that (1) his trial counsel was ineffective because (a) defense counsel coerced Petitioner's guilty plea, and (b) defense counsel failed to conduct any

investigation, and (2) he is factually innocent.  (*Id*. at 002-013.)  In support of his innocence claim, Petitioner submitted medical records showing that, for many years, he suffered from various sexually transmitted diseases ("STDs") including chlamydia, gonorrhea, and herpes.  (SR. at 004, 032-041.)  Petitioner claimed that he learned from his grandmother that the victim had not contracted any STDs and thus, it "would have been impossible for [the victim] to have not contracted these diseases if [Petitioner] had in fact[,] raped her."  (SR. at 004.)  Petitioner claimed that he reported this potential defense to defense counsel, and defense counsel failed to conduct any investigation.  (*Id*. at 004-005.)

The People opposed Petitioner's motion pursuant to N.Y. Crim. Proc. L. § 440.10.  (SR. at 042-047.)

On May 21, 2020, the Broome County Court issued an order directing Petitioner's trial counsel to respond to Petitioner's allegations.  (SR. at 199-201.)

On May 26, 2020, trial counsel filed a letter with Broome County Court stating that he researched the defense of STD transmission and determined that the defense would not be able to obtain the victim's medical records to confirm whether she had contracted any STDs.  (SR. at 202-204.)  In addition, trial counsel explained that he had researched the transmission of herpes and learned that the disease does not necessarily transfer to a sexual partner when the carrier is not experiencing a current outbreak.  (*Id*. at 203-204.)  Hence, trial counsel reasoned that the victim's potential absence of a STD would not necessarily disprove the sexual assault allegations.  (*Id*.)  Finally, trial counsel explained that obtaining the victim's medical records—if at all possible—carried a risk because if the victim had contracted a STD, the prosecution could use that as evidence against Petitioner.  (*Id*.)

4

In addition, trial counsel informed the motion court that he visited Petitioner on ten separate dates before the plea proceeding and, in deference to Petitioner's learning disability, read the entirety of the discovery to Petitioner.  (SR. at 202.)  Trial counsel denied coercing Petitioner to plead guilty and said that an investigator was present during at least one of their consultations and could confirm the same.  (*Id*. at 202-204.)

On June 8, 2020, trial counsel filed a second letter with the Broome County Court and affirmed under penalty of perjury pursuant to N.Y. C.P.R.L. § 2106 that the contents of his letter dated May 26, 2020, are true and accurate to the best of his knowledge.  (SR. at 208.)

On July 1, 2020, Broome County Court denied Petitioner's motion pursuant to N.Y. Crim. Proc. L. § 440.10 in its entirety.  (SR. at 051-056.)  The motion court found that trial counsel had provided meaningful and effective representation at all stages and that a valid guilty plea foreclosed an independent actual innocence claim.  (SR. at 054-055.)  The motion court also noted that Petitioner failed to provide any medical or expert affirmation to support his contention that the purported lack of an STD infection in the victim was proof that he had not raped her. (SR. at 54.)

On August 4, 2020, Petitioner moved pursuant to N.Y. Crim. Proc. L. § 460.15 for leave to appeal to the New York Appellate Division Third Department.  (SR. at 057-059.)  The People opposed Petitioner's motion seeking leave to appeal.  (SR. at 113.)

On September 28, 2020, the Appellate Division Third Department granted Petitioner leave to appeal the N.Y. Crim. Proc. L. § 440.10 motion and consolidated it with his direct appeal.  (SR. 115.)

In the consolidated appeal, Petitioner filed a counseled brief which argued that (1) his appeal waiver was not knowing, voluntary, and intelligent and was therefore invalid; (2) he was

denied his fundamental right to effective assistance of counsel; (3) his guilty plea was not knowing, voluntary, and intelligent; (4) the motion court erred in directing his trial counsel to submit a written response to the issue of fact raised in his motion pursuant to N.Y. Crim. Proc. L. § 440, instead of granting a hearing; (5) his constitutional right to counsel was violated when the trial court refused to grant his request for substitute counsel; and (6) his sentence was harsh and excessive.  (SR. at 211-263.)  The People filed a brief opposing Petitioner's arguments.  (SR. at 324-367.)

The Appellate Division Third Department unanimously affirmed the judgment of conviction and upheld the County Court's denial of Petitioner's motion pursuant to N.Y. Crim. Proc. L. § 440.10.  (SR. at 397-403.)  The Appellate Division held that (1) Petitioner's waiver of his right to appeal was valid; (2) Petitioner's argument that the trial court erred in denying his pre-plea request for substitute counsel is unpreserved for review absent a motion to withdraw his plea and, in any event, Petitioner's generalized disagreements with trial counsel regarding matters of strategy did not rise to the level of "serious complaints about counsel" and thus, were insufficient to warrant substitution; (3) Petitioner's claims that his plea was involuntary due to the trial court's failure to apprise him of the potential maximum period of incarceration, inquire as to his mental health status, place him under oath before accepting his plea, or sufficiently advise him of his *Boykin* rights, are unpreserved for review in the absence of a post-allocution motion and, in any event, are without merit because (a) there is nothing on the face of the plea colloquy that suggests Petitioner's claimed mental health issues hampered his ability to enter a knowing, intelligent, and voluntary plea of guilty, (b) there is nothing on the face of the plea colloquy that suggests that the purported lack of information regarding Petitioner's maximum sentencing exposure influenced his decision to plead guilty, (c) Petitioner was not required to

6

recite the facts underlying his crime and N.Y. Crim. Proc. L. § 220.50 does not require a plea to be made under oath, and (d) although it would have been preferable for the trial court to engage in a more detailed explanation of the trial-related rights that Petitioner would forfeit by pleading guilty, there is no basis upon which to invalidate his plea where he had ample opportunity to move to withdraw his plea before sentencing and did not do so; (5) to the extent that Petitioner's motion pursuant to N.Y. Crim. Proc. L. § 440 is predicated on his claim of actual innocence, his plea of guilty forecloses a vacatur of judgment of conviction on this ground; (6) Petitioner's claim that counsel pressured him to plead guilty and assured him that he would be protected in prison due to his mental infirmities are (a) supported only by his self-serving affidavit, and (b) belied by the record, which reveals that there is no reasonable probability that such allegations are true; and (7) trial counsel cannot be deemed ineffective for failing to pursue a strategy or defense that had little or no chance of success and Petitioner's claim that he had a lengthy history of sexually transmitted infections which would have rendered it impossible for him to have engaged in sexual intercourse with the victim without infecting her is flawed and unsupported by his submissions.  (*Id.*)

Petitioner filed a counseled motion seeking leave to appeal to the New York Court of Appeals.  (SR. at 404-417.)  Petitioner's application argued that (1) the lower court improperly directed trial counsel to submit a response to Petitioner's *pro se* motion pursuant to N.Y. Crim. Proc. L. § 440, instead of holding a fact-finding hearing and the Third Department erred in dismissing this as a mere procedural irregularity, (2) the Third Department erred in holding that Petitioner's appeal waiver was valid, (3) the Third Department erred in holding that Petitioner received effective assistance of counsel, (4) the Third Department erred in holding that Petitioner's plea was knowing and voluntary, (5) the Third Department incorrectly held that there

was no error in the trial court's refusal to grant Petitioner's request for substitute counsel due to counsel's inadequate representation, and (6) the Third Department erred in holding that Petitioner's claim of factual innocence was foreclosed by his guilty plea. (*Id*.) The People opposed Petitioner's application for leave to appeal to the Court of Appeals. (SR. at 418.)

On January 27, 2022, the New York Court of Appeals denied Petitioner's application for leave to appeal to the Court of Appeals. (SR. at 419.)

## III.   GROUNDS RAISED

### A.   Petition

On February 8, 2023, Petitioner commenced this action by the filing of a verified Petition for writ of habeas corpus. (Dkt. No. 1.) Petitioner asserts that he is entitled to habeas relief because his right to effective assistance of trial counsel pursuant to the Sixth Amendment was violated. (*Id*.) Petitioner argues that (1) his trial counsel would not investigate Petitioner's defenses, (2) trial counsel did not obtain or provide Petitioner with discovery, (3) Petitioner sought reassignment of trial counsel and was denied, and (4) Petitioner was intimidated and coerced into taking a plea. (*Id*. at 5.)

### B.   Respondent's Answer and Memorandum of Law

Generally, Respondent makes the following two arguments in support of her answer: (1) Petitioner's claim that his Sixth Amendment right to counsel was violated is procedurally defaulted and entirely meritless; and (2) the State Court reasonably rejected Petitioner's claim that he was denied effective assistance of counsel. (*See generally* Dkt. No. 20.)

More specifically, with respect to her first argument, Respondent asserts that Petitioner's claim that the trial court erred in denying his pre-plea request for new counsel is procedurally defaulted because Petitioner failed to file a motion pursuant to N.Y. Crim. Proc. L. § 220.60(3)

before sentencing, which, the Appellate Division determined, rendered this issue unpreserved for appellate review. (Dkt. No. 20 at 13-14.) Further, Respondent asserts that Petitioner fails to (a) demonstrate cause for the default and prejudice from a violation of his federal constitutional rights, or (b) show that this Court's refusal to consider his claim will result in a fundamental miscarriage of justice owing to his actual innocence claim. (*Id*. at 15-16.) Respondent asserts that, in any event, Petitioner's claim that the trial court erred by denying his pre-plea request for new counsel is meritless because Petitioner made no showing of good cause. (*Id*. at 16-19.)

With respect to her second argument, Respondent asserts that the Appellate Division reasonably determined that Petitioner's trial counsel was not ineffective. (Dkt. No. 20 at 19-26.) Respondent argues that this reasonable conclusion is entitled to doubly deferential review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (*Id*. at 19-23.) Respondent asserts that the Appellate Division reasonably rejected Petitioner's claim that trial counsel intimidated and coerced him into pleading guilty given that (a) trial counsel denied coercing Petitioner to accept the plea offer, (b) during the plea allocution Petitioner stated that he was not being coerced or promised anything other than the terms of the plea agreement, and (c) Petitioner addressed a letter to the prosecution expressing an interest in pleading guilty. (*Id*. at 23-24.) Respondent asserts that the Appellate Division reasonably rejected Petitioner's claim that trial counsel failed to investigate potential defenses given that (a) trial counsel informed Petitioner that the defense was unable to obtain the victim's medical records to prove Petitioner's suspicion that she did not have any STDs, (b) trial counsel identified that obtaining the victim's medical records posed a risk to the defense because the records could be used against Petitioner at trial, and (c) Petitioner would not necessarily have infected the victim any time he had sex with her and hence, the victim's potential absence of an STD would not disprove a sexual

9

assault. (*Id*. at 25-26.) Respondent asserts that the Appellate Division reasonably rejected Petitioner's claim that trial counsel failed to disclose discovery material where trial counsel visited Petitioner on ten separate dates and, in deference to Petitioner's learning disability, read the entirety of discovery to Petitioner. (*Id*. at 26.) Thus, Respondent asserts that Petitioner failed to demonstrate that trial counsel provided deficient representation or that any such deficiency resulted in a reasonable probability that the result of the state proceeding would have been different. (*Id*. at 19-26.)

To date, Petitioner has not filed a Traverse. (*See generally* docket sheet.)

## IV.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Review of Habeas Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's

factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

**B.     Legal Standard Governing Procedural Default**

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-539, 126 S. Ct.

11

2064, 165 L. Ed. 2d 1 (2006); *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Prejudice requires a petitioner to show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982)).

Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. 851*; see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"

12

*House*, 547 U.S. at 536-37, 126 S. Ct. 2064 (quoting *Schlup*, 513 U.S. at 327, 115 S. Ct. 851);

*see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004).

### C.    Legal Standard Governing Ineffective Assistance of Trial Counsel Claims

For ineffective assistance of counsel claims, federal habeas "review is 'doubly

deferential' because counsel is strongly presumed to have rendered adequate assistance and made

all significant decisions in the exercise of reasonable professional judgment[.]" *Woods v.

Etherton*, 578 U.S. 113, 117 (2016) (internal quotation marks and citation omitted).

To prove ineffective assistance of counsel, petitioner must meet the two-prong test set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The first prong requires petitioner to

show that counsel's performance fell below "an objective standard of reasonableness" under

"prevailing professional norms." *Strickland*, 466 U.S. at 688.  The Court must apply a "strong

presumption of competence" and "affirmatively entertain the range of possible reasons

[petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S.

170, 196 (2011) (citation and internal quotation marks omitted).  The second prong requires

petitioner to demonstrate that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

U.S. at 669.  "The likelihood of a different result must be substantial, not just conceivable."

*Harrington v. Richter*, 562 U.S. 86, 112 (2011).

## V.    ANALYSIS

### A.    Petitioner's Claim That His Sixth Amendment Right to Counsel Was Violated in Denying His Pre-Plea Request for New Counsel Is Procedurally Defaulted

After carefully considering the matter, I recommend that Petitioner's claim that his Sixth

Amendment right to counsel was violated by the trial court's denial of his pre-plea request for

new counsel, be denied for the reasons set forth in Respondent's memorandum of law.  (Dkt. No. 20 at 13-19.)  The following is intended to supplement—not supplant—those reasons.

As set forth by Respondent, the Appellate Division properly held that Petitioner's claim that his Sixth Amendment right to counsel was violated by the trial court's denial of his pre-plea request for new counsel, is procedurally defaulted.  (*Id*. at 13-16.)  More specifically, the Appellate Division held that "this argument is unpreserved for our review absent a motion to withdraw [Petitioner's] plea."  (SR. at 399.)

To preserve this claim, Petitioner was required to make a contemporaneous objection by filing a motion pursuant to N.Y. Crim. Proc. L. § 220.60(3) to withdraw his guilty plea before sentencing.  *See People v. Morehouse*, 140 A.D.3d 1202, 1203 (N.Y. App. Div. 3d Dep't 2016) (citing N.Y. Crim. Proc. L. § 220.60(3)) ("defendant failed to preserve [his] claim [that the county court failed to make an adequate inquiry before denying his request for substitute counsel] by moving to withdraw his plea.").  Petitioner's failure to file such a motion rendered the issue unpreserved for appellate review.  N.Y. Crim. Proc. L. § 470.05(2).

The Appellate Division's reliance on the contemporaneous objection rule to deny Petitioner's claim constitutes an adequate and independent state law ground for its decision.  *See Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (noting that "we have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" and collecting cases); *Whitley v. Ercole*, 642 F.3d 278, 286-87 (2d Cir. 2011) ("Our case law has long made clear that New York's contemporaneous objection rule is just such a 'firmly established and regularly followed' rule.").

Hence, this Court cannot review Petitioner's defaulted claim unless Petitioner (1) demonstrates cause for the default and prejudice from a violation of his constitutional rights, or

14

(2) shows that this Court's refusal to consider his claim will result in a fundamental miscarriage of justice owing to his actual innocence. *House v. Bell*, 547 U.S. 518, 536-539, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Petitioner has failed to offer any reason why he failed to move to withdraw his guilty plea and thus, has not shown cause for his default. *See Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995) ("Since [the petitioner] has failed to show cause [for his default], there is no need to address the prejudice requirement"). Moreover, Petitioner has failed to establish actual innocence to circumvent his procedural default. The medical records provided by Petitioner are insufficient to prove that he did not have sexual intercourse with the victim and he has not provided this Court with any new evidence to establish that he is actually innocent of first-degree rape. (*See* SR. at 402-403 [Appellate Division decision holding that the medical records provided by Petitioner do not support his contention that he necessarily did not have sexual intercourse with the victim].)

Moreover, as set forth by Respondent, even if Petitioner's claim was not subject to a procedural default, the Appellate Division reasonably concluded that the claim was meritless. (Dkt. No. 20 at 16-19; SR. at 399.) More specifically, the Appellate Division held that even if it were to hold that Petitioner's claim was preserved, "we would find that [his] generalized disagreements with counsel regarding matters of strategy did not rise to the level of 'serious complaints about counsel' and, thus, were 'insufficient to warrant substitution.'" (SR. at 399.)

An indigent criminal defendant has the right to counsel but does not have the right to counsel of his choice. *See Pizarro v. Bartlett*, 776 F. Supp. 815, 819 (S.D.N.Y. 1991). The focus of the Sixth Amendment's protection is "the adversarial process, not . . . the accused's relationship with his lawyer." *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984).

15

Notwithstanding, "[i]t is settled that where a [criminal] defendant voices a seemingly substantial complaint about [assigned] counsel, the court should inquire into the reasons for dissatisfaction." *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981) (internal quotation marks omitted). "To succeed on a substitution claim, a defendant must 'demonstrate good cause for the substitution of assigned counsel.'" *Burns v. Capra*, 22-CV-0381, 2025 WL 624952, at *4 (N.D.N.Y. Feb. 26, 2025) (Suddaby, J.) (quoting *Nelson v. Smith*, 04-CV-0564, 2008 WL 2357098, at *4 (N.D.N.Y. June 4, 2008)).

Before pleading guilty, Petitioner requested new counsel, accusing trial counsel of not representing Petitioner's "best interest." (SR. at 323.) After this request, the trial court held a hearing inquiring about Petitioner's relationship with counsel. (SR. at 276-281.) The Third Department found such efforts satisfied the minimum inquiry standard and, further—as set forth above—Petitioner's "generalized disagreements with counsel regarding strategy did not rise to the level of 'serious complaints about counsel' and, thus, were 'insufficient to warrant substitution.'" (SR. at 399.) Therefore, "to rule for [P]etitioner on [this ground], this Court must find the state courts' decision to be 'objectively unreasonable.'" *Burns*, 2025 WL 624952, at *4 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)).

Given that Petitioner's allegation regarding his discontentment with trial counsel was supported with little to no evidence, the undersigned finds that the trial court went above and beyond its duty in holding a hearing inquiring about Petitioner's relationship with counsel. *Burns*, 2025 WL 624952, at *5. Further, Petitioner has not demonstrated any "good cause" to replace trial counsel. Petitioner's dissatisfaction with his trial counsel's advice about the likelihood of success at trial did not establish good cause warranting the appointment of new counsel. An examination of the record reveals that trial counsel went to great lengths to

16

communicate with Petitioner and met with him on ten separate dates.  (SR. at 202-204.)  Thus, the undersigned refuses to find that the trial court acted unreasonably.

**B.    Petitioner's Claim That His Sixth Amendment Right to Effective Assistance of Counsel Was Violated Is Meritless**

After carefully considering the matter, I recommend that Petitioner's claim that his Sixth Amendment right to effective assistance of counsel was violated, be denied for the reasons set forth in Respondent's memorandum of law.  (Dkt. No. 20 at 19-26.)  The following is intended to supplement—not supplant—those reasons.

First, as set forth by Respondent, the Appellate Division reasonably found that Petitioner failed to establish that his trial counsel coerced him to plead guilty.  (SR. at 402.)  More specifically, the record reflects that (a) defense counsel denied coercing Petitioner to accept the plea offer (SR. at 204), (b) during the plea allocution, Petitioner expressly denied being coerced into pleading guilty (SR. at 166), and (c) Petitioner expressed a desire to plead guilty with the most favorable plea terms available (SR. at 372).  Hence, it was reasonable to conclude that Petitioner was not coerced into pleading guilty.

Second, the Appellate Division reasonably found that trial counsel did not fail to investigate potential defenses.  (SR. at 402-403.)  Indeed, trial counsel provided a sworn statement explaining that he advised Petitioner regarding his proposed defense and expressed that it was not viable because (a) the defense could not obtain the victim's medical records  to prove that she did not have any STDs, (b) if the defense was able to obtain the victim's medical records, the records posed a risk to the defense if the victim did have a history of STDs, and (c) after conducting research, herpes does not always transfer during sexual contact when the carrier is not experiencing a current outbreak.  (SR. 203-204, 208.)  Thus, it was reasonable to conclude that trial counsel thoroughly investigated Petitioner's potential defenses.

17

Third, defense counsel provided a sworn statement indicating that he visited Petitioner on ten separate dates before Petitioner entered a guilty plea and, in deference to Petitioner's learning disability, read the entirety of discovery to Petitioner.  (SR. at 202.)

Hence, Petitioner has not demonstrated that his trial counsel provided deficient representation or that any such deficiency resulted in a reasonable probability that the result of the state proceeding would have been different.  *Strickland*, 466 U.S. at 694.

For each of these reasons, I recommend that the Petition be denied and dismissed.

## VI.    CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c).").  In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition.  *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013).  A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154.  A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[1]  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

---

[1]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis.  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious.  Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Petition (Dkt. No. 1) be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[2]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: February  5 , 2026
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[2]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2025 WL 624952
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas BURNS, Petitioner,
v.
Michael CAPRA, Respondent.

9:22-CV-0381 (GTS)
|
Signed February 26, 2025

**Attorneys and Law Firms**

THOMAS BURNS, Petitioner, pro se, 16-A-1856, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562.

HON. LETITIA JAMES, Attorney for Respondents, Michelle Elaine Maerov, ESQ., Ass't Attorney General, Attorney General of New York, 28 Liberty Street, New York, NY 10005.

**DECISION and ORDER**

Glenn T. Suddaby, Senior United States District Judge

**I. INTRODUCTION**

**\*1** Petitioner pro se Thomas Burns seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Supporting Exhibits. Respondent opposed the Petition. Dkt. No. 17, Answer; Dkt. No. 17-1, Response Memorandum ("Resp."); Dkt. No. 17-2–17-10, Supporting Exhibits. Petitioner replied. Dkt. No. 23, Traverse ("Trav."). [1] For the reasons below, the Petition is dismissed and denied in its entirety.

**II. RELEVANT BACKGROUND**

Petitioner's 2016 conviction arose out of two separate incidents in late 2013 and early 2014. Dkt. No. 17-3 at 19-29. Each incident is discussed below.

**A. Hellijas Assault**

Throughout 2013, Joseph Hellijas and petitioner became acquainted from "being on the street[s]" in Schenectady County. Dkt. No. 17-7 at 154-55. On December 29, 2013, Hellijas encountered petitioner while picking up beer in his neighborhood. *Id.* at 159-60; Dkt. No. 17-3 at 19. Petitioner confronted Hellijas, accusing Hellijas of spreading a rumor that petitioner snitched to the police in an unrelated matter. Dkt. No. 17-3 at 427. Petitioner demanded an apology and Hellijas, confused, asked "[s]orry for what[?]" Dkt. No. 17-7 at 162. Petitioner then punched Hellijas in the face. Dkt. No. 17-3 at 19-20, 428. Hellijas stumbled and did not attempt to fight back but instead walked away from petitioner. *Id.* at 20, 428. Sufficiently inebriated to dull the immediate pain, Hellijas did not seek medical attention. *Id.* at 428. As Hellijas sobered up, he felt intense pain in his jaw and sought medical attention early the following morning. *Id.* After an examination, doctors informed Hellijas that petitioner broke his jaw in two places. *Id.* The next day, petitioner underwent surgery to repair the fractures. *Id.* After surgery, the surgeon informed Hellijas that the punch also broke several of his teeth which required dental attention. *Id.* Hellijas eventually had multiple teeth removed as a result of petitioner's punch. *Id.*

**B. Bingham Shooting**

Petitioner and Mervin Bingham met in late 2013. Dkt. No. 17-3 at 428; Dkt. No.17-7 at 613. After a fire destroyed Bingham's rental apartment in January 2014, Bingham and his girlfriend, Ashante Ayala, moved into petitioner's house. Dkt. No. 17-3 at 428. The cohabitation lasted less than a month before petitioner evicted Bingham following various disagreements. Dkt. No. 17-7 at 625; Dkt. No. 17-3 at 428. After Bingham's eviction, petitioner and Bingham saw each other a few times but the meetings were not cordial, both clearly upset with how their relationship broke down. Dkt. No. 17-7 at 624.

On the night of April 19, 2014, Bingham exited a store to see petitioner walking down the street. Dkt. No. 17-3 at 429; Dkt. No. 17-7 at 638-39. Upon making eye contact with each other, petitioner flashed a .45 caliber pistol at Bingham and began to berate Bingham about their past disagreements. Dkt. No. 17-3 at 429. The argument escalated and petitioner pointed the pistol in Bingham's face. *Id.*; Dkt. No. 17-7 at 642. Bingham then tried to grab the gun, and, after a brief scuffle, petitioner freed himself, took a step back from Bingham, and fired a shot at Bingham's torso. Dkt. No. 17-3 at 429. The bullet struck Bingham, knocking him to the ground, after which petitioner walked away from the scene. *Id.*; Dkt. No. 17-7 at 646. Bingham survived the gunshot but remained paralyzed below the waist. Dkt. No. 17-3 at 429.

**C. Arrest and Indictment**

**\*2** On July 2, 2014, police arrested petitioner in connection with the Bingham shooting. Dkt. No. 17-3 at 429. Following a further investigation, police also tied petitioner to Hellijas' assault. *Id.* at 22, 429-30. On July 30, 2014, in connection with both the Bingham and Hellijas incidents, a Schenectady County grand jury indicted petitioner on: (1) one count of Attempted Murder in the Second Degree (Bingham incident); (2) one count of Assault in the First Degree (Bingham incident); (3-4) two counts of Criminal Possession of a Weapon in the Second Degree; (5) one count of Reckless Endangerment in the First Degree; (6) one count of Assault in the Second Degree (Hellijas incident); and (7) one count of Criminal Possession of a Weapon in the Third Degree. [2] *Id.* at 464-68. Petitioner's case proceeded through discovery and motion practice without a request for severance of the Hellijas and Bingham charges. *Id.* at 430.

Petitioner elected for a jury trial. Dkt. No. 17-3 at 430. At trial, Hellijas testified about the incident with petitioner and his injuries. *Id.*; Dkt. No. 17-7 at 160-174. Petitioner testified and admitted to striking Hellijas on December 29, 2013. Dkt. No. 17-3 at 430; Dkt. No. 17-7 at 1172-73.

Bingham also testified, identifying petitioner as his shooter. Dkt. No. 17-7 at 639-50. Ayala, Bingham's girlfriend, testified that Bingham called her immediately after the shooting and identified petitioner as the culprit and that, a few weeks after the incident, petitioner apologized to Ayala for shooting Bingham. Dkt. No. 17-3 at 430, 500; Dkt. No. 17-7 at 983. A neighborhood witness of the shooting also testified that she heard the gunshot and saw a man matching petitioner's description walking away from the scene. Dkt. No. 17-3 at 430. Further, petitioner's daughter testified that petitioner sent her an article about the shooting and stated that he faced prison in connection with the shooting. *Id.* In his defense, petitioner offered convoluted, and at times conflicting, alibis as to his whereabouts on the day of the Bingham shooting. Dkt. No. 17-7 at 1140-48, 1325-48. Petitioner also introduced a witness who testified that the stippling [3] on Bingham's clothing indicated that Bingham was shot at a distance of less than one-foot, conflicting Bingham's testimony that petitioner took a large step back before firing at Bingham. Dkt. No. 17-8 at 60-91.

Following closing arguments, a New York Supreme Court, County of Schenectady jury ruled petitioner not guilty of count 1, Attempted Murder in the Second Degree, but found petitioner guilty of the lesser included charge of Assault in the Second Degree. Dkt. No. 17-9 at 54. The jury then convicted petitioner of all the remaining charges. [4] Dkt. No. 17-9 at 54-56. On May 2, 2016, the court imposed an aggregate sentence of 27 years, followed by 5 years of post-release supervision. Dkt. No. 17-10 at 22-26.

**D. Direct Appeal**

Petitioner timely appealed his conviction to the New York Appellate Division, Third Department ("Third Department"). Dkt. No. 17-3 at 1-70. Between petitioner's counseled brief and his pro se reply brief, petitioner raised *inter alia* the following claims: (1) the Hellijas and Bingham assaults were improperly joined; (2) the trial court failed to give a lesser included offense instructions on the counts 1 and 2, and counts 1 and 2 were multiplicitous; (3) the prosecutor engaged in 16 incidents of misconduct throughout the trial; and (4) trial counsel's cumulative errors deprived petitioner of his right to effective counsel. Dkt. No. 17-3 at 1-70, 327-57.

**\*3** On November 25, 2020, the Third Department denied petitioner's appeal. Dkt. No. 17-3 at 760-67. The Third Department first held petitioner received effective assistance of counsel. *Id.* at 761-63. The court found that trial counsel was not ineffective for failing to sever the Hellijas and Bingham counts, noting that petitioner "failed to establish that a motion for severance would have been granted or that he suffered any prejudice from the lack of severance[.]" *Id.* at 762. Next, the Third Department found petitioner's claim that counsel failed to request lesser included offense charges for count 1 and count 2 of the indictment factually inaccurate as the record reflected that counsel did request these charges. *Id.* at 763. The Third Department also noted that "we [are not] persuaded that counsel's decision to obtain an expert witness, whom [the trial court] ultimately deemed unqualified to testify on a specific issue, was anything other than a trial tactic that proved to be unsuccessful and does not, in and of itself, constitute ineffective assistance of counsel[.]" *Id.*

The Third Department next turned to petitioner's prosecutorial misconduct claims. Dkt. No. 17-3 at 763-64. The court first found that petitioner failed to object to the prosecutor's comments on petitioner's religion and parenting at trial, and, therefore, found the two claims unpreserved for appellate review. *Id.* at 763. The Third Department noted that even if the "issues [were] properly before us, we would find [no fault with] the challenged questions" as defense counsel raised the issues during petitioner's direct testimony. *Id.* The Third Department then found all of petitioner's remaining preserved contentions meritless, noting that a review of

"the record as a whole fails to disclose that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial." *Id.* at 764 (internal quotation marks and citations omitted).

The Third Department also found that the trial court did not err in refusing a jury charge on the lesser included offense of assault in the third degree as to count 6 (the Hellijas assault charge). Dkt. No. 17-3 at 764-65. The Third Department explained that Hellijas suffered a fractured jaw and lost numerous teeth, and "[b]ased upon this evidence, no reasonable view of the evidence could support a finding [of the lesser included charge as] the victim sustained ... a serious physical injury." *Id.* at 765 (internal quotation marks and citations omitted).

The Third Department then rejected petitioner's claim that the trial court did not conduct the necessary minimum inquiry into petitioner's request for a new counsel. Dkt. No. 17-3 at 765-66. Examining the record, the Third Department noted that the trial court held two in camera hearings inquiring about petitioner's relationship with counsel, and the court found that such efforts satisfied the minimum inquiry standard. *Id.*

Lastly, the Third Department found petitioner's remaining contentions unpreserved for appellate review and affirmed petitioner's guilty verdict. Dkt. No. 17-3 at 766.

Petitioner sought leave to appeal to the New York State Court of Appeals. Dkt. No. 17-3 at 768-78. The Court of Appeals denied leave on March 21, 2022. *Id.* at 783.

Petitioner then filed the instant Petition on April 13, 2022. Pet. at 1.

### III. PETITION

Petitioner challenges his 2016 judgment of conviction in New York Supreme Court. Pet. 1-12. Petitioner argues he is entitled to federal habeas corpus relief because: (1) his grand jury proceedings were defective, *id.* at 5-7; (2) the trial court failed to conduct a minimal inquiry into petitioner's request for new counsel, *id.* at 7; (3) the trial court improperly joined the Hellijas and Bingham assaults, *id.* at 8; (4) counts 1 and 2 of the indictment were multiplicitous, *id.* at 8-9; (5) rampant prosecutorial misconduct violated his right to a fair trial, *id.* at 9; and (6) of ineffective assistance of trial counsel, *id.* at 9-10. Petitioner does not specify the relief he seeks.

### IV. DISCUSSION

#### A. Standard of Review

 **\*4**  Prior to reviewing petitioner's claims, the Court notes the heightened standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA requires a federal court sitting in habeas review to defer to a state court's adjudication of claims made on the merits unless the "decision [ ] was contrary to, or involved an unreasonable application of, clearly established federal law[ ] ... or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, a federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied ... federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Rather, a federal court may only grant relief if it finds the state court's application of federal law or fact "objectively unreasonable." *Id.* at 409.

Thus, to find for petitioner on claims that the state courts found meritless, this Court must hold the state court's application of fact or federal law objectively unreasonable. *Williams*, 529 U.S. at 409.

#### B. Claim 1: Defective Grand Jury

Petitioner's seeks review of his state grand jury proceedings. Pet. at 5-7. However, the Constitution does not guarantee a right to a grand jury in a state criminal prosecution. *See LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (finding that the Fifth Amendment right to a grand jury indictment is not incorporated by the Due Process Clause of the Fourteenth Amendment, and, therefore, does not apply to the states); *see also Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("[D]eficiencies in the state grand jury proceedings are [not] cognizable in a habeas corpus proceeding."); *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."). Under 28 U.S.C. § 2254(a), this Court may only "entertain an application for a writ of habeas corpus ... on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); *see also Thomas v. Larkin,* No. 1:12–CV–2899, 2013 WL 5963133, at \*13 (E.D.N.Y. Nov. 7, 2013) ("[F]ederal courts may not issue the writ of habeas corpus on the basis of a perceived error of state law[.]") (cleaned up). Accordingly, the Court finds petitioner's claim non-cognizable. Count I is denied.

### C. Claim 2: Minimal Inquiry

Petitioner claims that the trial court failed to make a minimum inquiry into his requests for substitute counsel, infringing on his right to effective counsel under the Sixth Amendment. Pet. at 7.

"It is settled that where a defendant voices a seemingly substantial complaint about [assigned] counsel, the court should inquire into the reasons for dissatisfaction." *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981) (internal quotation marks omitted). To succeed on a substitution claim, a defendant must "demonstrate good cause for the substitution of assigned counsel." *Nelson v. Smith*, No. 9:04-CV-0564 (LEK/RFT), 2008 WL 2357098, at *4 (N.D.N.Y. June 4, 2008).

Once prior to trial and once during his trial petitioner requested new counsel, accusing trial counsel of being ineffective. Trav. at 32. Specifically, petitioner stated that counsel refused to communicate with petitioner. *Id.* After both requests for new counsel, the trial court held two in camera hearings inquiring about petitioner's relationship with counsel. Dkt. No. 17-3 at 765. The Third Department found such efforts satisfied the minimum inquiry standard and, further, petitioner's complaints "did not create good cause for the substitution of trial counsel[.]" *Id.* at 765-66. Therefore, to rule for petitioner on Claim 2, this Court must find the state courts' decision to be "objectively unreasonable." *Williams*, 529 U.S. at 409.

 **\*5** Considering petitioner's two allegations were supported with little to no evidence, this Court finds the trial court went above and beyond its duty in holding two in camera hearings inquiring about petitioner's relationship with counsel. Further, petitioner has not demonstrated any "good cause" to replace trial counsel. An examination of the record reveals that trial counsel went to extreme lengths to communicate with petitioner, even meeting with petitioner privately after cross-examining each witness to ensure all of petitioner's questions were asked. Dkt. No. 17-3 at 450-51; *see e.g.* Dkt. No. 17-7 at 280. Thus, this Court refuses to find that the trial court acted unreasonably.

Even if this Court found the trial court did not make a sufficient inquiry into petitioner's requests, petitioner suffered no prejudice from the trial court's alleged failure to inquire into the attorney/client relationship. Where "the failure to inquire causes the [petitioner] no harm, that [failure] cannot

of itself be a basis for granting the writ [of habeas corpus]." *McKee*, 649 F.2d at 933. Indeed, if the "proffered reasons [for dissatisfaction with counsel] are insubstantial and the defendant receives competent representation from counsel, the court's failure to inquire further constitutes harmless error." *Carpenter v. Conway*, No. 2:07–CV–3602, 2011 WL 795860, at *5 (E.D.N.Y. Feb. 25, 2011) (citing *McKee*, 649 F.2d at 933). Here, the proffered reasons for petitioner's dissatisfaction were conclusory and not supported by the record. Moreover, as discussed in Section IV.G below and evident from a review of the record, trial counsel provided competent representation, and, therefore, this Court considers any alleged failure by the trial court to constitute harmless error.

Accordingly, the alleged failure of the trial court to make a minimal inquiry did not result in a violation of the Sixth Amendment.

### D. Claim 3: Improper Joinder

Petitioner asserts that the trial court erred when it did not sever the Hellijas assault (Count 6 of the indictment) from the Bingham shooting (Counts 1-5, 7). Pet. at 8. Petitioner claims the failure to sever resulted in a violation of his Sixth Amendment right to a fair trial. *Id.* Respondent argues that the claim is: (1) procedurally barred; and (2) meritless.[5] Resp. at 41-45.

#### 1. Procedural Bar

Respondent first argues that Claim 3 is procedurally barred under the adequate and independent doctrine.[6] Resp. at 41-43. A procedural default in a federal habeas case occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (holding that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement[,]" federal habeas review is barred by the independent and adequate state ground doctrine). Procedural default precluding federal habeas review applies only "if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*,

489 U.S. 255, 262 (1989); *see also Green v. Travis,* 414 F.3d 288, 294 (2d Cir. 2005).

**\*6** Respondent correctly contends that the Third Department rejected the improper joinder claim on the contemporaneous objection rule, an independent and adequate state ground under *Jackson.* Resp. at 41. "New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling ... or at any subsequent time when the [trial] court had an opportunity of effectively changing the same.' " *Whitley v. Ercole,* 642 F.3d 278, 286 (2d Cir. 2011) (quoting C.P.L § 470.05(2)). "The rule has been interpreted by New York courts to require, 'at the very least, that any matter which a party wishes' " to preserve for appellate review be " 'brought to the attention of the trial court at a time and in a way that gave [the trial court] the opportunity to remedy the problem and thereby avert reversible error.' " *Id.* (quoting *People v. Luperon,* 623 N.Y.S.2d 735, 738-39 (1995)).

Here, petitioner did raise an objection to the failure to sever but not until after petitioner's sentencing, too late for the trial court to have "the opportunity to remedy the problem." Dkt. No. 17-3 at 118-120; *Whitley,* 642 F.3d at 286 (internal quotation marks omitted). Thus, the Third Department held the issue unpreserved for its review based on the contemporaneous objection rule.[7] Dkt. No. 17-3 at 766. Such a holding constitutes an adequate and independent state law ground for dismissal, and, thus, precludes this Court from habeas review. *See Rutigliano v. Lamanna,* No. 9:19-CV-0745 (GLS/ML), 2022 WL 4348580, at \*7 (N.D.N.Y. July 20, 2022) ("The Third Department's holding that Petitioner's argument was unpreserved, constitutes an adequate and independent state law ground, which generally precludes habeas review.").

Therefore, this Court finds petitioner's improper joinder claim procedurally barred. We may only review the claim if petitioner can establish either cause for noncompliance and resulting prejudice or actual innocence. *Rutigliano,* 2022 WL 4348580, at \*7 (finding a "narrow exception to the preservation rule" where a petitioner can "demonstrate[ ] cause for [ ] procedural default and actual prejudice"); *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (finding an exception to the preservation rule where a petitioner can demonstrate "a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted").

Here, petitioner does not contend, nor does the record reflect, petitioner's actual innocence or any cause for petitioner's noncompliance.[8] Thus, the Court see no reason to lift the procedural bar to Claim 3. As such, the Court dismisses the claim as procedurally barred under the independent and adequate state ground doctrine.

**2. Claim 3 Dismissed on the Merits**

Even if not procedurally barred, the Court finds Claim 3 meritless. An erroneous "[j]oinder of offenses rises to the level of a constitutional violation only if it 'actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process.' " *Herring v. Meachum,* 11 F.3d 374, 377 (2d Cir. 1993) (quoting *Tribbitt v. Wainwright,* 540 F.2d 840, 841 (5th Cir. 1976)). "[W]here a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial." *Id.* at 377-78. Habeas courts generally have refused to find actual prejudice when the crimes are "distinct and easily compartmentalized." *Id.* at 378; *Burrows v. Herbert,* No. 6:02-CV-6314, 2009 WL 1514917, at \*5 (W.D.N.Y. June 1, 2009) (finding the proof, "as presented at trial, was such that it was able to be easily considered separate in the minds of the jury[,]" and, thus, avoid confusion and prejudice); *see also United States v. Chang An-Lo,* 851 F.2d 547, 556 (2d Cir. 1988) (finding that defendants were not substantially prejudiced by joint trial where "the evidence with respect to each of the defendants was adequately straightforward that the jury could consider it without any significant spillover effect.").

**\*7** Here, the Hellijas assault and the Bingham shooting were distinct and easily compartmentalized. The incidents were four months apart and involved different victims; further, one involved a punch, the other involved a gun. Based on the vast differences, the jury could easily keep the crimes "separate in the[ir] minds[.]" *Burrows,* 2009 WL 1514917, at \*5. Further, for both crimes, the evidence was "adequately straightforward." *Chang An-Lo,* 851 F.2d at 556. In fact, petitioner admitted to punching Hellijas at trial, thus negating the risk that the jury relied on any Bingham shooting evidence when convicting petitioner of the Hellijas assault. Dkt. No. 17-7 at 1172-73. The prosecution also introduced overwhelming evidence of petitioner's guilt in the Bingham shooting, including testimony from the victim's girlfriend and petitioner's daughter that petitioner admitted

to shooting Bingham. Dkt. No. 17-6 at 983; Dkt. No. 17-3 at 430. Accordingly, the easily compartmentalized and straightforward evidence for both crimes convince the Court that petitioner suffered no actual prejudice from the joinder. Therefore, the Court holds that petitioner's due process rights were not violated, and, as such, petitioner's Claim 3 is dismissed.

### E. Claim 4: Multiplicitous Counts

Petitioner alleges that his convictions of first- and second-degree assault arising out of the Bingham shooting rendered the indictment multiplicitous, violating the double jeopardy clause of the Fifth Amendment. Pet. at 8-9; Trav. at 22-24. Respondent counters, stating that the claim is procedurally barred. Resp. at 45-46.

Respondent argues that the adequate and independent state law ground bars Claim 4. Resp. at 46. As discussed in Section IV.D.1 above, a procedural default in federal habeas cases occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment." *Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014)* (internal quotation marks omitted). Respondent contends that the Third Department rejected petitioner's multiplicitous claim on an independent and adequate state ground; specifically, the contemporaneous objection rule. Resp. at 46. Respondent is correct. Petitioner never raised an objection in trial court, and, therefore, the Third Department held the issue unpreserved. Dkt. No. 17-3 at 439, 766. Such a holding constitutes an adequate and independent state law ground for dismissal, and, thus, precludes this Court from habeas review. *See Rutigliano, 2022 WL 4348580, at *7* ("The Third Department's holding that Petitioner's argument was unpreserved, constitutes an adequate and independent state law ground, which generally precludes habeas review.").

Accordingly, this Court finds petitioner's multiplicitous claim procedurally barred and may only review the claim if petitioner can establish either cause for noncompliance and resulting prejudice or actual innocence. *Rutigliano, 2022 WL 4348580, at *7* (finding a "narrow exception to the preservation rule" where a petitioner can "demonstrate[ ] cause for [ ] procedural default and actual prejudice"); *Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002)* (finding an exception to the preservation rule where a petitioner can demonstrate "a fundamental miscarriage of justice, i.e., that

he is actually innocent of the crime for which he has been convicted").

Here, petitioner does not contend, nor does the record reflect, petitioner's actual innocence or any cause for petitioner's noncompliance. Thus, this Court see no reason to lift the procedural bar to Claim 4. As such, the Court dismisses the claim as procedurally barred under the independent and adequate state ground doctrine.

### F. Claim 5: Prosecutorial Misconduct

Petitioner challenges the prosecution's conduct during the direct examination of Bingham, petitioner's cross-examination, and the prosecution's summation. Pet. at 9; Dkt. No. 17-3 at 57-66. In total, petitioner brings 16 prosecutorial misconduct claims.

**\*8** As to the questioning of Bingham, petitioner alleges the prosecution:

(1) improperly asked Bingham to speculate about petitioner's state of mind during the shooting, Dkt. No. 17-3 at 63; and

(2) improperly questioned Bingham about his grand jury testimony, including reading leading grand jury questions into the trial record, *id.* at 63-64.

During the cross-examination of petitioner, petitioner claims that the prosecution improperly:

(3) questioned petitioner's religious faith, Dkt. No. 17-3 at 58-59;

(4) asked petitioner about his parenting, *id.*;

(5) asked petitioner if he thought he was "pretty much smarter than everyone else[,]" *id.* at 60;

(6) questioned petitioner about the number of judges who previously presided over the case, *id.*;

(7) commented on petitioner's need for assigned counsel, *id.* at 64;

Lastly, petitioner alleges that the prosecution erred in its summation when it improperly:

(8) referred to statements that had not been admitted into evidence or produced to the defense, Dkt. No. 17-3 at 60;

(9) implied that defense counsel thought petitioner guilty of shooting Bingham, *id.* at 61;

(10) stated that petitioner committed the crimes, *id.* at 61-62;

(11) described Bingham and his testimony as "candid[,]" *id.* at 62;

(12) described two other witnesses as those "who respect the oath and respect the truth[,]" *id.* at 62;

(13) described witnesses who testified for the prosecution pursuant to plea deals as "candid[,]" *id.*;

(14) stated that the prosecution's cross-examination of petitioner "maybe overdid it[,]" *id.*;

(15) claimed petitioner's proposed expert witness was a "hired gun[,]" *id.* at 62-63;

(16) attempted to explain law to the jury, *id.* at 63.

All 16 of petitioner's claims fail. Misconduct claims 3 and 4 are procedurally barred and meritless. Claims 1-2, 5-16 are meritless.

#### 1. Procedurally Barred

Misconduct claims 3 and 4 are barred by the adequate and independent state law ground.[9] As discussed in Section IV.D.1 above, a procedural default in a federal habeas case occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment." *Jackson v. Conway,* 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted). Respondent contends that the Third Department rejected misconduct claims 3 and 4 on an independent and adequate state ground; specifically, the contemporaneous objection rule. Resp. at 51. Respondent is correct. Petitioner never raised objections on either point during his trial, and, therefore, the Third Department held the issues unpreserved. Dkt. No. 17-3 at 763. Such a holding constitutes an adequate and independent state law ground for dismissal, and, thus, precludes this Court from habeas review. *See Rutigliano,* 2022 WL 4348580, at *7 ("The Third Department's holding that Petitioner's argument was unpreserved, constitutes an

adequate and independent state law ground, which generally precludes habeas review.").

**\*9** Nor can petitioner find an exception to avoid the procedural bar as petitioner cannot prove, and, in fact, does not contend, that he is actually innocence or has any cause for his noncompliance. As such, the Court dismisses misconduct claims 3 and 4 as procedurally barred under the independent and adequate state ground doctrine.

#### 2. Meritless Claims

"[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute egregious misconduct." *Miranda v. Bennett,* 322 F.3d 171, 180 (2d Cir. 2003) (internal quotation marks omitted). To assess if misconduct rises to an egregious level, a reviewing court must assess the alleged misconduct "in the context of the entire trial." *Donnelly v. DeChristoforo,* 416 U.S. 637, 639 (1974). "The relevant inquiry, therefore, is whether the prosecutor's conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Sheard v. Lee,* No. 1:18-CV-2125, 2019 WL 5847151, at *6 (S.D.N.Y. Oct. 7, 2019) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)). To amount to a constitutional violation, a prosecutor's conduct must be more than improper; rather, the misconduct must be "so prejudicial that [it] rendered the trial fundamentally unfair." *Id.* (cleaned up).

The Third Department found all 16 of petitioner's misconduct claims meritless, stating "given the overwhelming proof of defendant's guilt, the cumulative effect of the challenged comments was not so prejudicial as to deny defendant his fundamental right to a fair trial[.]" Dkt. No. 17-3 at 763-64 (internal quotations and citations omitted). Thus, this Court owes the Third Department's decision AEDPA deference and may only rule for petitioner on Claim 5 if this Court finds the Third Department's decision "objectively unreasonable." *Williams,* 529 U.S. at 409.

Considering the overwhelming proof of petitioner's guilt, this Court cannot find the prosecutor's actions "so prejudicial" as to render petitioner's trial "fundamentally unfair." *Sheard,* 2019 WL 5847151, at *6. First, petitioner admitted to the Hellijas assault in open court. Dkt. No. 17-7 at 1172-73. Second, Bingham identified petitioner as the man who shot him, Dkt. No. 17-7 at 639-50, and Bingham's girlfriend, Ashante Ayala, testified that Bingham called her immediately

after the shooting and identified petitioner as the culprit. Dkt. No. 17-7 at 983; Dkt. No. 17-3 at 430. A neighborhood witness also testified that she heard the gunshot and, saw a man matching petitioner's description walking away from the scene. Dkt. No. 17-6 at 844-851. Further, petitioner's daughter testified that petitioner sent her an article about the shooting and insinuated that he was the shooter. Dkt. No. 17-3 at 430. Thus, reviewing the prosecution's alleged misconduct in context of the entire trial, this Court agrees with the Third Department's assessment that the overwhelming proof of defendant's guilt rendered any alleged prosecutorial misconduct harmless. Accordingly, petitioner's Claim 5 and its 16 subparts are dismissed as meritless.

### G. Claim 6: Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that: "(1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. U.S.*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

**\*10** To satisfy the first *Strickland* prong, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Such errors include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (cleaned up). When reviewing an ineffective assistance claim, courts must be "highly deferential" and approach the analysis with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

The second *Strickland* prong requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts must look to the "cumulative weight of error" to determine whether any potential prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). Petitioner must meet both "the performance prong [and] the prejudice prong[ ]" to demonstrate a Sixth Amendment violation. *Bennett v. U.S.*, 663 F.3d 71, 85 (2d Cir. 2011).

Petitioner alleges that trial counsel was ineffective because counsel failed to: (1) sever Count 6 (the Hellijas assault

charge) from the remaining counts, Dkt. No. 17-3 at 66-67; (2) request lesser included charges for count 1 (attempted murder in the second degree) and count 2 of the indictment (assault in the first degree), *id.* at 67; (3) obtain an expert witness to testify about the stippling on Bingham's clothing, *id.* at 67-68; (4) communicate and consult with petitioner about the case, *id.* at 68-69; and (5) investigate the case thoroughly and locate exculpatory witnesses, *id.* at 350-51. For the reasons below, the Court finds all five claims meritless.

### 1. Improper Joinder

Petitioner argues that counsel's failure to move to sever Count 6 (the Hellijas assault) from the rest of the indictment was a "miscarriage of justice" that amounts to ineffective assistance of counsel. Trav. at 28. The Third Department rejected this exact argument when deciding petitioner's direct appeal, finding that the Hellijas and Bingham incidents were properly joined and the proof for "each crime was separately presented, uncomplicated, and easily segregable in the jury's mind[.]" Dkt. No. 17-3 at 762 (internal quotation marks and citations omitted). The Third Department concluded petitioner failed to "establish that a motion for severance would have been granted or that he suffered any prejudice from the lack of severance[,]" and, therefore, ruled counsel's failure to move to sever amounted to a "strategic ... decision" and did not violate the Sixth Amendment. *Id.*

As the Third Department ruled on the merits of the issue, this Court can only find for petitioner if it finds the Third Department's ruling unreasonable. *Williams*, 529 U.S. at 409. The Court refuses to do so. As discussed in Section IV.D.2 above, and in the Third Department's opinion, any motion to sever the indictment would likely have failed. [10] "Counsel cannot ... be deemed ineffective for failing to make an argument or objection that stood little chance of success." *Cochran v. Griffin*, No. 9:18-CV-0175 (LEK/TWD), 2021 WL 1223848, at \*9 (N.D.N.Y. Mar. 31, 2021); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made."); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (internal quotation marks and citations omitted); *Jones v. Spitzer*, 1:01-CV-9754, 2003 WL 1563780, at \*18 (S.D.N.Y. Mar. 26, 2003) ("Obviously, the failure to

make a meritless ... motion does not amount to ineffective assistance."). As the severance issue had little chance of success, counsel appropriately chose to focus on other issues. This Court finds such choice a sound trial decision and refuses to find counsel ineffective for failing to make a meritless motion.

**\*11** Further, petitioner also offers no legitimate argument on how the combined indictment prejudiced him, and, from a review of the record, the Court cannot find any prejudice. Therefore, this Court concludes that the Third Department acted reasonably in rejecting petitioner's argument, and, thus, dismisses petitioner's claim.

### 2. Lesser and Included Charges

Petitioner alleges that counsel's failure to request lesser included charges for count 1 (attempted murder in the second degree) and count 2 of the indictment (assault in the first degree) amounted to ineffective assistance of counsel. Dkt. No. 17-3 at 67. However, as the Third Department noted, *id.* at 763, counsel did in fact request lesser and included charges. *Id.* at 580-84. As counsel did request lesser included charges, the Court refuses to find counsel deficient based on inaccurate claims.

### 3. Expert Witness

Petitioner next claims that counsel's "failure to obtain a qualified expert on the issue of stippling deprived [petitioner] of meaningful representation." Dkt. No. 17-3 at 67. Addressing the same argument, the Third Department ruled that "counsel's decision to obtain an expert witness, whom [the trial court] ultimately deemed unqualified to testify on [the stippling issue], was ... a trial tactic that proved to be unsuccessful and does not, in and of itself, constitute ineffective assistance of counsel[.]" *Id.* at 763. As the Third Department ruled on the merits of the issue, this Court can only find for petitioner if it finds the Third Department's ruling unreasonable. *Williams*, 529 U.S. at 409. The Court refuses to do so.

An adverse ruling is not enough to prove ineffective assistance of counsel; instead, petitioner must demonstrate counsel's "performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Petitioner provides no evidence, nor does anything in the record reflect,

that the attempt to certify the stippling expert by counsel fell below an objective standard of reasonableness. The Court refuses to find counsel's performance deficient based only on an unsuccessful motion. Accordingly, the Court dismisses petitioner's expert witness claim.

### 4. Communication

Petitioner next attempts to satisfy *Strickland* by arguing that counsel failed to communicate with him. Dkt. No. 17-3 at 68-69. The Third Department rejected an identical argument, stating "it is exceedingly clear from the record that counsel went to great lengths to attempt to effectively communicate with defendant." *Id.* at 763. As the Third Department ruled on the merits of the issue, this Court can only find for petitioner if it finds the Third Department's ruling unreasonable. *Williams*, 529 U.S. at 409. The Court refuses to do so.

Petitioner argues that counsel continuously failed to meet with him and such failure rendered counsel's performance deficient. Dkt. No. 17-3 at 68-69. However, a "failure to communicate, by itself, does not render the attorney's performance deficient." *United States v. Amirouche*, No. 1:24-CV-2596, 2024 WL 4181842, at \*11 (E.D.N.Y. Sept. 13, 2024). Further, from an examination of the record, besides a failure to communicate with petitioner prior to sentencing, it appears counsel went above and beyond expectations to communicate with client. For instance, counsel met with petitioner privately after cross-examining each witness to ensure all of petitioner's questions were asked. Dkt. No. 17-3 at 450-51; *see e.g.* Dkt. No. 17-7 at 280. Considering such efforts to communicate with petitioner, and trial counsel's otherwise competent representation, the Court cannot find the Third Department's holding unreasonable. Accordingly, petitioner's communication claim is dismissed.

### 5. Failure to Investigate

**\*12** Lastly, petitioner asserts that counsel's failure to investigate and locate potential exculpatory witnesses amounted to a Sixth Amendment violation. Dkt. No. 17-3 at 350-51; Trav. at 29. A petitioner " 'does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses might have supplied relevant testimony; rather, he must state exactly what testimony [the potential witnesses] would have supplied and how such testimony would have changed the result.'

" *Santana v. United States*, No. 2:15-CR-0457, 2022 WL 1527269, at *8 (E.D.N.Y. May 13, 2022) (internal quotation marks omitted). "Courts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from [a petitioner]." *Id.* (cleaned up). Petitioner states that Norman Chavis could have provided exculpatory evidence in the Bingham shooting but counsel did not try to locate Chavis. Trav. at 29. Petitioner claims that he and Chavis were on the phone immediately before the Bingham shooting, and, based on what Chavis heard, Chavis could have testified that petitioner accidentally shot Bingham. *Id.*

Petitioner can establish petitioner was on the phone a few minutes after the incident, s*ee* Dkt. No. 17-7 at 1182, but a review of the record indicates that petitioner was not on the phone prior to the Bingham incident nor immediately after the incident. *See* Dkt. No. 17-7 at 639-40; Dkt. No. 17-6 at 868-878, 883-84. Viewing petitioner's claim skeptically, as urged by *Santana*, the Court concludes that there was no evidence of petitioner being on the phone prior to the incident, and, therefore, Chavis could not testify about the nature of the shooting incident. Thus, it seems highly unlikely petitioner's additional witness "would have changed the result[,]" *Santana*, 2022 WL 1527269, at *8 (cleaned up), and, therefore, the Court rejects petitioner's failure to investigate claim.

Petitioner failed to demonstrate that trial counsel acted deficiently, and, therefore, petitioner's Claim 5 is dismissed.

**V. CONCLUSION**

**WHEREFORE**, it is
**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety;

**ORDERED** that the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' ") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(d); 2d Cir. R. 22.1.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 624952

---

**Footnotes**

1    For the sake of clarity, citations to parties' submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2    A Schenectady County grand jury also filed a charge of animal abuse based on a third separate incident. Dkt. No. 17-3 at 467. The prosecution dropped the charge before trial.

3    The witness defined stippling as the visible "impact of powder burning or unburnt powder that are going to show up on a surface around [a] bullet hole." Dkt. No. 17-8 at 80.

4    After his conviction, petitioner filed a § 330.30 motion to set aside the judgement that the court denied. Dkt. No. 17-3 at 431.

5    Respondent also argues that the claim is non-cognizable. Resp. at 43. The respondent is correct that petitioner's Claim 3 includes an argument that the trial court violated C.P.L § 200.20 which is non-cognizable. However, petitioner also ties his improper joinder claim to his Sixth Amendment right to a fair trial, creating a federal question properly before this Court. Pet. at 8.

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.                    10

6    Respondent also argues that the claim is procedurally barred because "petitioner failed to present it as a violation of the United States Constitution when he raised [the claim] on appeal." Resp. at 41. Respondent is factually incorrect, as petitioner raised the constitutional claim in his appellate brief. *See* Dkt. No. 17-3 at 37.

7    The Third Department did discuss the merits of the improper joinder issue but in the context of petitioner's ineffective assistance of counsel claim. Dkt. No. 17-3 at 762.

8    Petitioner does argue that his trial counsel was ineffective for failing to move to separate the Hellijas and Bingham charges. However, the claim is meritless, *see infra* Section IV.G.1, and, therefore, cannot be used to demonstrate "cause" to overcome the procedural bar petitioner faces in Claim 3.

9    Respondent argues that the adequate and independent state law ground bars misconduct claims 3-6 and 9-14. Resp. at 51. However, a closer examination of the Third Department's decision finds that the Third Department only rejected misconduct claims 3 and 4 as unpreserved. Dkt. No. 17-3 at 763.

10    As discussed in Section IV.D.2, the two crimes joined in the indictment, the Hellijas assault and the Bingham shooting, were distinct and easily compartmentalized. The incidents were four months apart and involved different victims; further, one involved a punch, the other involved a gun. Based on the vast differences, the jury could easily keep the crimes "separate in the[ir] minds." *Burrows*, 2009 WL 1514917, at *5. Further, for both crimes, the evidence was "adequately straightforward." *Chang An-Lo*, 851 F.2d at 556. In fact, petitioner admitted to punching Hellijas at trial, thus negating the risk that the jury relied on any Bingham shooting evidence when convicting petitioner of the Hellijas assault. Dkt. No. 17-7 at 1172-73.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2357098
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

James Trey NELSON, Petitioner,
v.
Joseph SMITH, Warden; New York
State Attorney General, Respondents.

No. 9:04–CV–564 (LEK/RFT).
|
June 4, 2008.

**Attorneys and Law Firms**

James Trey Nelson, USP Victorville, U.S. Penitentiary, Adelanto, CA, pro se.

Andrew M. Cuomo, Attorney General for the State of New York, Michael G. McCartin, Esq., Assistant Attorney General, of Counsel, Albany, N.Y., for Respondents.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on March 26, 2008 by the Honorable Randolph F. Treece, United States Magistrate Judge, pursuant to 28 U .S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report–Rec. (Dkt. No. 20). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Petitioner James Trey Nelson ("Petitioner"), which were filed on April 11, 2008. Objections (Dkt. No. 22). Petitioner also filed a Motion to amend/correct his Petition for Writ of Habeas Corpus. Dkt. No. 21. This is Petitioner's second Motion to amend his Petition, as the first was stricken for failure to attach a proposed Amended Petition. *See* Dkt. No. 19.

### I. Report and Recommendation
It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report–Recommendation should be approved for the reasons stated therein.

### II. Motion to Amend
Petitioner's Motion to Amend includes two attachments: Exhibit A, which is his previously filed Petition, and Exhibit B, which is a "supplemental proffer" of legal arguments in support of his Petition and which requests that an unspecified motion be held in abeyance and for leave to file a memorandum establishing his claims for relief under *United States v. Gonzalez–Lopez,* 548 U.S. 140 (2006). Dkt. No. 21, Exh. B. Construing Exhibit B liberally to constitute, with Exhibit A, a proposed Amended Petition, the Court will consider the Motion to Amend.

By statute, a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Rule 15 of the Federal Rules of Civil Procedure governs motions to amend petitions for habeas corpus. *See Littlejohn v. Artuz,* 271 F.3d 360, 363 (2d Cir.2001); *Ching v. United States,* 298 F.3d 174, 180–81 (2d Cir.2002). Even though Rule 15 provides that "leave shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), the district court may deny that leave on the grounds of futility. *Jones v. N.Y. State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir.1999).

Petitioner bases his request to amend his Petition on *United States v. Gonzalez–Lopez,* 548 U.S. 140 (2006). That case, however, was considered and even cited by Judge Treece in the Report and Recommendation. *See* Report–Recommendation at 4 ("the Supreme Court has held that trial courts retain 'wide latitude in balancing the right to counsel of choice ... against the demands of its calendar.") (Dkt. No. 20). Unlike the present case, the defendant in *Gonzalez–Lopez* was not seeking to replace assigned counsel, and the Government in that case conceded that there was an erroneous deprivation of the defendant's choice of counsel. 548 U.S. at 141–42, 144. In contrast, the record in this case indicates that there was no breakdown of communication or an irreconcilable conflict between the Petitioner and his counsel, as would be needed to substitute new counsel on the eve of trial. *United States v. Schmidt,* 105 F.3d 82, 89 (2d Cir.1997). Because the proposed Amended Petition would not change this Court's ruling, Petitioner's Motion to amend is denied.

**\*2** Accordingly, it is hereby

**ORDERED,** that the Report–Recommendation (Dkt. No. 20) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Petitioner's Motion to Amend (Dkt. No. 21) is **DENIED;** and it is further

**ORDERED,** that the Petition for a Writ of Habeas Corpus (Dkt. No. 1) is **DENIED;** and it is further

**ORDERED,** that no Certificate of Appealability shall issue with respect to any of Petitioner's claims; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

On August 15, 2001, *pro se* Petitioner James Trey Nelson was convicted of assault in the first degree, assault in the second degree, criminal possession of a weapon in the third degree, and promoting prison contraband. Trial Tr., Aug. 15, 2001 at pp. 683–85. On October 10, 2001, Petitioner was sentenced to twenty years incarceration for the first degree assault conviction and lesser concurrent terms for the remaining convictions. Sentencing Tr., Oct. 10, 2001 at p 13. Petitioner now bring a Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the grounds that he was denied both the right to counsel of his choice and effective assistance of counsel under the Sixth Amendment to the United States Constitution. Dkt. No. 1, Pet. at ¶ 12. For the reasons that follow, it is recommended that the Petition be **denied.**

### I. BACKGROUND

The following facts were found by the New York State appellate court:

> In January 2001, defendant was an inmate at the Albany County Correctional Facility. During an altercation involving several inmates,

defendant allegedly cut the victim's arm with a razor blade. Correction officers arriving at the scene saw defendant with his hands in the back of his pants. The facility's body orifice security system subsequently detected that defendant had a piece of metal in the area of his buttocks and a strip search revealed grease on his underwear. After obtaining a search warrant, police officers transported defendant to the hospital, where X rays were taken revealing that defendant had a razor blade concealed in his rectum. Defendant eventually removed the razor blade and turned it over to authorities.

*People v. Nelson,* 1 A.D.3d 796 (N.Y.App. Div.3d Dep't 2003).

Upon the commencement of his trial, Petitioner asked the court to adjourn the proceeding so that he could retain a different attorney. Trial Tr. at pp. 6–8. In support of his request, Petitioner stated that he was not notified of the trial until a week before it began, and that he had just received discovery materials. *Id.* In addition, he stated that due to the restrictions imposed at the federal prison in which he resided, he was not allowed to communicate by phone with his appointed trial counsel unless his counsel initiated the call. *Id.* Finally, Petitioner told the trial court that his family was present in the courtroom and was prepared to immediately retain an attorney on his behalf. *Id.* The court denied Petitioner's request for a postponement and the trial commenced. *Id.* at p. 9.

**\*3** At trial, Sergeant (Sgt.) Gecewiz testified that following the altercation, he asked Petitioner what the altercation was about; Petitioner responded that "they went after one of my dogs." *Id.* at pp. 517–18. On cross-examination, Sgt. Gecewiz testified that he made a written report of Petitioner's alleged oral admission and provided it to the investigators of Albany County Correctional Facility. *Id.* at pp. 517–18. Petitioner's trial counsel requested production of Gecewiz's written report, but the prosecution stated that they did not have the report. *Id.* at pp. 518–19. After an off the record discussion between both attorneys and the judge, the trial continued. *Id.*

After his conviction, Petitioner appealed to the New York State Appellate Division, Third Department, on the grounds that, *inter alia,* he was denied his constitutional right to the counsel of his choice and he was also denied his constitutional right to effective representation of counsel inasmuch as his trial attorney failed to object to the admission of Sgt. Gecewiz's testimony concerning Petitioner's alleged confession on the grounds that Petitioner was given no notice of such evidence as required by New York Criminal Procedure Law § 710.30. Def.-App.'s State Ct. Br. & Appendix at pp. 4–10.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177–78 (2d Cir.2003); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001). The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Rivera v. New York,* 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo,* 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> **\*4** [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Williams* and *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

### B. Right to Counsel of Choice

The Constitution guarantees a criminal defendant the right to retain counsel of his choice. *Chandler v. Fretag,* 348 U.S. 3, 9 (1954). However, that right is not absolute. For example, an indigent defendant cannot "insist on representation by an attorney he cannot afford[.]" *Wheat v. United States,* 486 U.S. 153, 159 (1988). Furthermore, the Supreme Court has held that trial courts retain "wide latitude in balancing the right to counsel of choice ... against the demands of its calendar." *United States v. Gonzalez–Lopez,* 126 S.Ct. 2557, 2565–66 (2006); *see also Morris v. Slappy,* 461 U.S. 1, 11 (1983) (stating that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.") (quoting *Ungar v. Sarafite,* 376 U.S. 575, 598 (1964)).

In the Second Circuit, it is settled law that "[o]n the eve of trial, just as during trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict." *United States v. Schmidt,* 105 F.3d 82, 89 (2d Cir.1997) (citing *United States v. Calabro,* 467

F.2d 973, 986 (2d Cir.1972)). Petitioner must therefore demonstrate good cause for the substitution of assigned counsel. However, it is incumbent upon the trial court, upon receipt of a "seemingly substantial" complaint from a defendant about his counsel, to inquire into the reasons for the dissatisfaction. *McKee v. Harris,* 649 F.2d 927, 933 (2d Cir.1981).

In favor of his motion to adjourn the proceeding in order to retain new counsel, Petitioner stated that he had only received discovery materials a week earlier and he was not able to maintain meaningful contact with his assigned counsel because he was housed in a federal prison located a considerable distance from the trial location. Trial Tr. at pp. 6–8. The trial court did not make any further formal inquiry into Petitioner's complaints. *Id.* Rather, the trial court asked appointed counsel if he was ready to proceed, to which he responded that aside from his inability to locate a certain witness, he was ready to proceed to trial. *Id.* at p. 8.

The record indicates that there was no actual breakdown of the communication between the appointed attorney and Petitioner. The appointed counsel indicated he consulted with Petitioner about the trial a week before the trial began. *Id.* at p. 13. At trial, Petitioner cooperated during his direct examination and conferred with his counsel on numerous occasions. *See, e.g., id.* at pp. 11, 15, 35, 36, 38. For his part, the appointed attorney was intimately familiar with both the facts and the law of the case. *See generally* Trial Tr. In addition, appointed counsel's willingness to continue to represent Petitioner after his motion to retain new counsel was denied undermines any assertion that there was an irreconcilable breakdown in communication. Thus, beyond Petitioner's conclusory allegations, there is no evidence of any significant breakdown in communication between Petitioner and his counsel.

**\*5** Although the trial court did not inquire further into the reasons for Petitioner's dissatisfaction, when the "reasons [an accused complains about his counsel] are made known to the court, the court may rule without more." *McKee v. Harris,* 649 F.2d at 934 (quoting *Brown v. United States,* 264 F.2d 363, 369 (2d Cir.1959) (Burger, J. concurring in part)). In this case, Petitioner stated plainly why he desired to retain different counsel, and after consulting Petitioner's counsel, the trial court rejected his request. We note that beyond the alleged difficulties in communication caused by his remote location, Plaintiff did not express any concern about his counsel's

ability to present an adequate defense nor any other conflict that might have stymied an effective defense.

Furthermore, because Petitioner suffered no harm, the trial court's failure to make a formal inquiry does not constitute a sufficient basis for granting a writ. *McKee v. Harris,* 649 F.2d at 933 ("Where the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting the writ.").

In sum, since good cause did not exist for the substitution of new counsel, we cannot find that the trial court's rejection of Petitioner's request constituted an unreasonable application of Federal law. It is therefore recommended that the Petition be **denied** as to this claim.

### C. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, i.e., that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone,* 535 U.S. 685, 695 (2002) (citing *Strickland v. Washington,* 466 U.S. 668, 688 & 694 (1984)); *see also Aeid v. Bennett,* 296 F.3d 58, 62–63 (2d Cir.2002); *Brown v. Artuz,* 124 F.3d 73, 79–80 (2d Cir.1997); *Rattray v. Brown,* 261 F.Supp.2d 149, 157 (E.D.N.Y.2003).[1] Moreover, to establish that his counsel's conduct was objectively unreasonable, a petitioner must demonstrate that his counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2000).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court has held that federal district courts need not address both components if a petitioner fails to establish either one. *Strickland v. Washington,* 466 U.S. at 697. In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

In the case at bar, Petitioner claims he was denied effective assistance of counsel when his appointed counsel failed to object to the admission of Sgt. Gecewiz's testimony regarding

Petitioner's alleged confession in the absence of prior notice that such evidence would be proffered. Pet. at ¶ 12. Sgt. Gecewiz testified that following the altercation, he asked Petitioner what the altercation was about, to which Petitioner responded, "they went after one of my dogs." Trial Tr. at pp. 517–18. Under New York Criminal Procedure Law, "[w]henever the people intend to offer at a trial [ ] evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion ... they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." N.Y. CRIM. PROC. L. § 710.30(1) ("CPL"). Thus, Petitioner's attorney had a colorable basis on which to object to the prosecution's failure to give notice as required by CPL § 710.30.

**\*6** Notwithstanding counsel's failure to object, Petitioner did not suffer any prejudice as a consequence. At trial, there was overwhelming evidence presented of Petitioner's guilt. The testimony adduced revealed that the victim was severely cut with a razor blade. A correctional officer arriving at the scene of the altercation in the prison library observed Petitioner with his hands in the back of his pants. Trial Tr. at pp. 404–06. After Petitioner was apprehended, a strip search revealed grease in his underwear. *Id.* An x-ray later revealed that Petitioner had secreted a razor blade in his anus, which he eventually removed himself. *Id.* at pp. 439–44. Finally, the victim of the crime positively identified Petitioner as the person who slashed his arm. *Id.* at pp. 356–57.

Even if Petitioner's statement "they went after one of my dogs" had not been introduced, there is not a reasonable probability that the outcome of the proceeding would have been any different. Petitioner's claim must therefore fail under the second prong of the *Strickland* test, and for that reason we recommend that his Petition on this claim be **denied.**

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Petition for a Writ of *Habeas Corpus* be **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2357098

---

## Footnotes

1    In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law [.]' " 529 U.S. 362, 391 (2000); *see also* *Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).

---

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.